No. 25-60182

# In the United States Court of Appeals for the Fifth Circuit

Prime International Shipping, L.L.C.,

   *Petitioner*,

v.

Occupational Safety and Health Review Commission; Lori Chavez-DeRemer, Secretary, U.S. Department of Labor,

   *Respondents*.

On Appeal from
Occupational Safety & Health Review Commission
23-0152

PETITION FOR REVIEW OF A FINAL ORDER OF THE OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

Patrick C. Bates
Texas Bar No. 24068882
Federal ID No. 2014055
*patrick@pbateslaw.com*
Philip J. Nolen
Texas Bar No. 24109529
Federal ID No. 3416086
*philip@pbateslaw.com*
**P. BATES LAW, PLLC**
711 W. Bay Area Blvd., Suite 675
Houston, Texas 77598
713.487.8660 (telephone)
**ATTORNEYS FOR PETITIONER**

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Lori Chavez-DeRemer, Secretary, U.S. Department of Labor; Occupational Safety and Health Review Commission | Respondents |
|---|---|
| William Tompson<br>Louise Betts<br>Seema Nanda<br>Daniel Moczula<br>New York, New York and Washington D.C.<br>U.S. Department of Labor | Counsel for Respondents |
| Prime International Shipping, L.L.C. | Petitioner |
| Patrick C. Bates<br>Philip J. Nolen<br>Houston, Texas<br>P. Bates Law, PLLC | Counsel for Petitioner |
| Judge Joshua R. Patrick | Administrative Judge of the United States Occupational Safety and Health Review Commission, presiding below |

*/s/ Patrick C. Bates*
Patrick C. Bates

Attorneys for Petitioner

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner Prime International Shipping, LLC ("Petitioner" or "Prime") submits that the issues are clear enough from the record and this briefing that oral argument should not be necessary.

## TABLE OF CONTENTS

*CERTIFICATE OF INTERESTED PARTIES* ............................................................ ii

*STATEMENT REGARDING ORAL ARGUMENT* ........................................... iii

*JURISDICTIONAL STATEMENT* .......................................................... 2

*STATEMENT OF ISSUES* ............................................................ 3

*STATEMENT OF THE CASE* .......................................................... 4

*SUMMARY OF THE ARGUMENT* .................................................. 8

*ARGUMENT* ............................................................................. 8

    **A.** **The ALJ abused his discretion by finding, without "substantial evidence,"  Petitioner had employees subject to the Act exposed to the alleged hazards giving rise to Citation 1, Items 1 or 4.**.................................**10**

    **B.** **The ALJ abused his discretion by finding, without "substantial evidence,"  the hazards supporting Citation 1, Items 1 or 4 existed on the date of the Citation or that Petitioner had knowledge of them.**....................**15**

*CONCLUSION* ........................................................................... **19**

# TABLE OF AUTHORITIES

## Cases

*Barrera v. E.I. Du Pont de Neumours & Co.*,
653 F.2d 915, 920 (5th Cir. Unit A 1981) .............................................................10

*FreightCar Am.*,
No. 18-0970, 2021 WL 2311871, at *2-3 (OSHRC, Mar. 3, 2021) .......................11

*Greenspan v. Shalala*,
38 F.3d 232, 236 (5th Cir. 1994).............................................................................9

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318, 323-24 (1992)..................................................................................11

*Owens-Corning Fiberglass, Corp. v. Donovan*,
659 F.2d 1285, 1290 (5th Cir. 1981) .....................................................................16

*S&H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Comm'n*,
659 F.2d 1273, 1282 (5th Cir. 1981) .....................................................................15

*Sanderson Farms, Inc. v. Perez*,
811 F.3d 730, 735 (5th Cir. 2016)...........................................................................8

*Taylor Diving & Salvage Co., Inc. v. U.S. Dep't of Labor*,
599 F.2d 622, 625 (5th Cir. 1979)..........................................................................10

*Thibault v. Bellsouth Telecommunications, Inc.*,
612 F.3d 843, 848 (5th Cir. 2010).............................................................10, 12, 13

*Trinity Indus., Inc. v. Occupational Safety & Health Review Comm'n*,
206 F.3d 539, 542 (5th Cir. 2000).....................................................................15, 17

*Trinity Marine Nashville, Inc. v. Occupational Safety & Health Review Comm'n*,
275 F.3d 423, 426-27 (5th Cir. 2001)......................................................................9

*U.S. v. Shear*,
962 F.2d 488, 490 (5th Cir. 1992)..........................................................................10

*W.G. Yates & Sons Const. Co. Inc. v. Occupational Safety & Health Review
Comm'n*, 459 F.3d 604, 606-07 (5th Cir. 2006) ...................................................15

## Statutes

29 U.S.C. § 652(6).................................................................................................10
29 U.S.C. § 659(c)...................................................................................................2
29 U.S.C. § 660(a)...................................................................................................2
Occupational Safety and Health Act of 1970 .........................................................2

# I.
## JURISDICTIONAL STATEMENT

*Agency jurisdiction*. The Occupational Safety and Health Administration ("OSHA") issued Petitioner a Citation and Notification of Penalty ("Citation") on January 6, 2023, alleging four serious violations of Section 5(a) of the Occupational Safety and Health Act of 1970 (the "Act"), 29 U.S.C. § 651, *et seq.* Vol. 3, Item 1.[1] Petitioner filed a Notice of Contest on or about February 21, 2023. Vol. 3, Item 2. At that time, the Commission obtained jurisdiction under Section 10(c) of the Act, 29 U.S.C. § 659(c).

*Appellate jurisdiction*. This Court possesses appellate jurisdiction under Section 11(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 660(a). Judge Patrick's decision became a final order on February 28, 2025, *see* Vol. 3, Item 39, and Petitioner filed its Petition for Review with this Court on April 8, 2025. Petitioner filed its Petition for Review within Section 11(a)'s 60-day time frame.

---

[1] Pursuant to Rule 17, Federal Rules of Appellate Procedure, the Occupational Safety and Health Review Commission (the "Commission") filed a Certified List of relevant docket entries in lieu of the record. When citing the record in this Brief, Petitioner will reference the Volume and Page Number corresponding to those documents described in the Certified List of relevant docket entries. For example, the Stenographic Transcript of Testimony will be cited as "Vol. 1, page: lines"; Exhibits of the Secretary of Labor will be cited as Vol. 2, C-___"; Petitioner's Exhibits will be cited as "Vol. 2, R-___"; and the pleadings will be cited as "Vol. 3, Item ___." Pursuant to Fifth Circuit Rule 30.2(a), Petitioner will file a copy of the portions of the record relied upon by the parties in their respective briefs within 21 days of the filing of Respondent's brief.

Petitioner's Petition for Review is properly before this Court because this is the

Circuit in which the alleged violations occurred.

## II.
## STATEMENT OF ISSUES

1.      Whether the Administrative Law Judge ("ALJ") abused his discretion by finding, without substantial evidence supporting the decision, that Petitioner's independent contractors were employees under the economic realities test set forth in the *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042 (5th Cir. 1987) and the United States Supreme Court's test in *Nationwide Ins. Co. v. Darden*, 503 U.S. 318 (1992).

2.      Whether the ALJ abused his discretion by finding Petitioner had actual or constructive knowledge of the alleged hazardous condition alleged in Serious Citation 1, Item 1, (exposure of employees to a falling hazard which was remediated by use of a metal dock ramp stored on-site) or Item 4 (an unguarded chopsaw), or whether any evidence established personnel were exposed to these on the date of the Citation when no evidence even suggested Petition had knowledge of chop saw blade being exposed, or that any Petitioner representative (employee or contractor) was exposed to it, and no evidence established either hazard on the date of the Citation.

3.1    Petitioner is a small freight-forwarding/shipping business in Houston, Texas.  Petitioner's business involves loading vehicles (salvage and otherwise) into shipping containers supplied by international entities.    Prior to a serious injury caused by a defective shipping container in July, 2022, Petitioner had an accident-free history. Vol. 1, 136:22-23 (no forklift accidents) and 139:2-4 (no employees falling through gap). But in July, 2022 that all changed.

3.2    Specifically, in July 2022 Petitioner received a shipping container supplied by Maersk to load with vehicles.  Petitioner is neither an inspector nor warrantor of these shipping containers; instead, the provider (here Maersk) is required under applicable rules to inspect and ensure the containers are safe for their intended uses.  Unfortunately, in July, 2022 Maersk failed in these obligations. Instead, Petitioner received a shipping container with widespread rusted structural components, deterioration, and painted-over shoddy repairs.  These defective components in the shipping containers resulted in a serious accident in July 2022 (which Petitioner did not cause and for which it was non-suited from the now-dismissed state court lawsuit).  In the accident, an independent contractor died and another was severely injured.  While the inspection resulting in the Citation

followed this accident, none of the Citation items involve hazards directly or indirectly involved in the accident.

3.3    Petitioner provides a safe work environment to employees to the extent it knows about and controls this environment.  At the time of the Citation, Petitioner employed three employees, *see* Vol. 1, 133:12-15, contracted with three independent contractors, *id*. at 143:6-10, including Jose Vasquez. *Id*. at 134:10-12. Petitioner's independent contractors load shipping containers, *see id*. at 134:1-3, and are free to complete the work as they see fit. *Id*. at 139:22-140:1.  Petitioner hires only independent contractors to load vehicles onto shipping containers. *Id*. at 133:2-25; 134:1-7; 143:6-10. Petitioner does not control how its contractors complete the work and hires contractors with experience in freight forwarding and/or operating forklifts. *Id*. at 135:4-6.

3.4    In Petitioner's normal operations, where shipping containers are "backed up" to a loading dock, sometimes a gap between the loading dock and a trailer exists. *Id*. at 138:7-10. The gap is not a hole. *Id*. Petitioner does not have control over the trucking company dropping off containers. *Id*. at 138:25-139:1. Petitioner has dock plates for its independent contractors to use – at their discretion. *Id*. at 139:7-11.  In addition, Petitioner has a chop-saw which is on site and necessary for cutting lumber and cabling to secure the vehicles into the shipping containers.

3.5     On July 13, 2022, OSHA inspected Petitioner's location. Vol. 2, C-1. Although the Secretary asserts the inspections occurred between July 13th and 14th, 2022, Citation 1, Item 1 states the inspector [Mr. Cabello] saw violations on or about July 12, 2022 – a day no inspector was present. *Id*. at 90:11-14 (confirming multi-day inspection occurred July 13th and 14th). As a result, the Respondent has no evidence Petitioner's employees were exposed to the hazard giving rise to Citation 1, Item 4 (allegedly unguarded chopsaw which had been "tied" open with a rope) on the date of the inspection. Vol. 1, 136:3-5; 6-12.   Consistent with this, OSHA's representative (Cabello) testified he did not witness use of the chopsaw, Vol. 1, 95:24-96:1, and no witness knew why the guard was tied up. *Id*. at 117:1-3.

3.6     In response to the inspection, however, the Secretary issued the Citation to Petitioner encompassing four items on January 6, 2023. Vol. 2, C-1. Petitioner filed a Notice of Contest on January 21, 2023. Vol. 3, Item 2. The parties engaged in a one-day trial on July 16, 2024 before Judge Joshua Patrick. Vol. 3, Item 38, pg. 3.

3.7     The Secretary dismissed Item 2 but proceeded to trial on Citation Items 1 (hole), 3 (forklift), and 4 (chopsaw). Vol. 1, 11:21-23. The Secretary and Prime filed post-hearing briefs on October 15, 2024. Vol. 3, Items 35-36. The trial court issued its decision and order on January 17, 2025. Vol. 3, Item 38. The trial court affirmed Citation 1, Items 1, 3, and 4, and determined Prime's employees were exposed to the hazards – a finding which included that the personnel working on Petitioner's behalf were not contractors. *Id*. Specifically, the ALJ found Prime's loading crew contractors were employees under both the economic realities test and under *Darden*. *Id*.

3.8     The Commission docketed the trial court's decision on January 29, 2025. Vol. 3, Item 39. Prime filed a timely Petition for Discretionary Review on February 13, 2025. Vol. 3, Item 40. The Commission took no action, and the trial court's decision and order became a final Commission order on March 3, 2025. Vol. 3, Item 41.

## IV.
## SUMMARY OF THE ARGUMENT

4.1     The ALJ abused its discretion by finding Prime had employees exposed

to hazards described in Citation 1, Items 1 (hole) and 4 (unguarded chopsaw blade).

Specifically, the ALJ lacked "substantial evidence" Petitioner's personnel were

employees, and not independent contractors, under the applicable law.  In addition,

the ALJ lacked "substantial evidence" that Petitioner had any knowledge of the

hazards described in Citation 1, Items 1 (hole) and 4 (unguarded chopsaw blade).  In

addition, while the ALJ found Petitioner violated Citation 1, Item 4 (unguarded

chopsaw), no evidence established whether the chopsaw was unguarded on the date

of the inspection, and the finding is this unsupported by any evidence, much less the

"substantial evidence" required.  Accordingly, the ALJ abused his discretion.

## V.
## ARGUMENT

5.1     To prevail in proving Petitioner's violations under the Act, the

Secretary was required to show by a preponderance of the evidence: (1) that the cited

standard applies; (2) noncompliance with the cited standard; (3) access or exposure

to the violative conditions; and (4) that the employer had actual knowledge of the

conditions through the exercise of reasonable diligence. *Sanderson Farms, Inc. v.

Perez*, 811 F.3d 730, 735 (5th Cir. 2016).   Here the ALJ found violations under

Citation 1, Items 1 and 4.  But the ALJ's findings and rulings were an abuse of

discretion.

5.2    In reviewing the ALJ's findings, this Court is bound by those findings only if they are supported by substantial evidence on the record considered as a whole. *Trinity Marine Nashville, Inc. v. Occupational Safety & Health Review Comm'n*, 275 F.3d 423, 426-27 (5th Cir. 2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (applying standard in an SSI disability determination appeal). The Court scrutinizes the record to determine whether such evidence is present. *Id.* Here, no "substantial evidence" supports the ALJ's decision, and he abused his discretion by concluding the evidence supported Citation 1, Items 1 and 4, namely that (1) any of Petitioner's personnel allegedly exposed to these hazards were employees; or (2) that Petitioner had any knowledge of these hazards.

**A.    The ALJ abused his discretion by finding, without "substantial evidence," Petitioner had employees subject to the Act exposed to the alleged hazards giving rise to Citation 1, Items 1 or 4.**

5.3    The standards cited in the Secretary's Citation 1, Items 1 and 4 only apply to hazards for which "employees" are exposed. *See Barrera v. E.I. Du Pont de Neumours & Co.*, 653 F.2d 915, 920 (5th Cir. Unit A 1981) (explaining "OSHA does not create duties between employers and invitees, only between employers and their employees…"); *see also Taylor Diving & Salvage Co., Inc. v. U.S. Dep't of Labor*, 599 F.2d 622, 625 (5th Cir. 1979) (explaining "[w]hen adopting OSHA, Congress deliberately sought to achieve job safety while maintain proper employee-employer relations."). And the Act[2] defines "employee" as "an employee of an employer who is employed in a business of his employer which affects commerce." *U.S. v. Shear*, 962 F.2d 488, 490 (5th Cir. 1992) (citing 29 U.S.C. § 652(6)).   The employee or independent contractor analysis is highly dependent on the situation presented. *Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843, 848 (5th Cir. 2010).

---

[2]  *See* 29 U.S.C. § 651 *et seq.*

5.4    To aid this inquiry, Courts consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id*. at 846 (analyzing employee under the FLSA). No single factor is determinative, *id*., and the Secretary must prove Prime was the employer of the loading crew. *See FreightCar Am.*, No. 18-0970, 2021 WL 2311871, at *2-3 (OSHRC, Mar. 3, 2021) (emphasizing Complainant has burden to establish employment relationship). Here no employees were exposed to the alleged hazards in Citation 1, Items 1 and 4 since Prime's loading crew were the only personnel exposed to the alleged hazards and are independent contractors under *Darden* and *Mr. W. Fireworks* (as described in *Thibault*). Vol. 1, 143:6-10; 133:23-25.

5.5    Before hiring its independent contractor, Prime testified negotiations took place regarding pay and the scope of work the contractor would provide. *Id*. at 143:17-24. Consistent with his role as a contractor, Mr. Vasquez (Petitioner's contractor who testified) received a 1099 and was paid via Zelle.[3] Vol. 2, R-26b; Vol. 1, 119:18-21. Mr. Salem further testified the contractors would load the vehicles

---

[3]    *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992) (Courts consider the tax treatment of the hired party and method of payment).

without instruction. Vol. 1, at 134:23-135:6.

    5.6    Prime's contractors were free to determine the vehicle loading process, implicitly utilizing their unique skills. *Id*. at 146:12-14. "Skill" is considered under *Darden*[4] and *Thibault*[5], and this factor favors Prime. Mr. Vasquez admitted that Prime did not control how he completed his work or even the amount of lumber to use. Vol. 1, 123:4-17. He also admitted Prime did "[n]ot control" his job duties. *Id*. at 12-17. This is no different from a homeowner hiring a contractor to install a new roof; the homeowner informs the contractor what they want, and the contractor completes it according to their skill. Thus, Prime had limited control over the contractors' work, and contractors determined the loading process, including the manner of installation, and whether a dock plate would be used. Loading multi-ton vehicles into a shipping container inherently requires some level of advanced skill. Again, the contractors' skills combined with Prime's lack of control weigh in favor of contractor status. Further, because no employer-employee relationship existed, Prime deducted operating expenses from the contractors' pay, such as forklift and

---

[4]    *Darden*'s factors include the hiring party's right to control the manner and means by which the product is accomplished; **the skill required**; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; provision of employee benefits; and the tax treatment of the hired party. *Darden*, 503 U.S. at 323-24 (emphasis added).

[5]    *See Thibault*, 612 F.3d at 848 (economic realities considers the skill and initiative requiring in performing job).

machinery costs, and issued them "non-employee" compensation, such as a 1099. *Id*. at 150:8-17; 154:8-17; Vol. 2, R-26b.

5.7     Prime only deducted operating expenses from contractor pay and never from Prime's employee office workers. *Id*. at 151:22-24. Contractors could obtain additional funds if they furnished their own tools and equipment – an act solely within the contractors' control. *See Thibault*, 612 F.3d at 848 (explaining a factor is the degree to which the worker's opportunity for profit or loss is determined by the alleged employer).

5.8     Mr. Salem testified no Prime employees used the chopsaw – only contractors did. *Id*. at 140:6-13. Mr. Vasquez – a Prime contractor – testified to "sometimes" using the saw to cut wire rope, but the guard was not tied up when he used it. *Id*. at 117:1-3. He confirmed the guard was *always* down. *Id*. at 117:7-12. The Secretary presented no evidence of who used the chopsaw or why the guard was tied up – even though Mr. Vasquez testified the guard was always down and Prime had no knowledge of why the guard was tied up. *Id*. at 140:14-16. In addition to the chopsaw, contractors loaded the trailers.

5.9     Because Prime never loaded trailers, it never determined when a "ramp" would be necessary to cross the loading threshold. *Id*. at 113:21-23. Mr. Vasquez determined whether a dock plate was necessary, and he was a contractor. *Id*. at 113:24-114:3. Prime did provide a dock plate for the contractors' use, but Prime never policed them – it was up to them to determine necessity. *Id*. at 139:2-6; 9-11. The Secretary elicited no evidence that Prime employees traversed the "gap" between the containers and the loading dock.  Unlike Petitioner's ample evidence proving the exposed personnel's status as independent contractor, the ALJ had no evidence establishing they were employees. Thus deprived of "substantial evidence" any "employees" were exposed to the hazards identified in Citation 1, Items 1 and 4, the ALJ abused its discretion by finding that Prime's employees were exposed to the hazards in Citation 1, Items 1 and 4.

**B.** **The ALJ abused his discretion by finding, without "substantial evidence," the hazards supporting Citation 1, Items 1 or 4 existed on the date of the Citation or that Petitioner had knowledge of them.**

5.10 Along with non-compliance with the standard, the employer's knowledge is a fundamental element of the Secretary's burden of proof for establishing a violation of OSHA regulations. *Trinity Indus., Inc. v. Occupational Safety & Health Review Comm'n*, 206 F.3d 539, 542 (5th Cir. 2000); *see S&H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Comm'n*, 659 F.2d 1273, 1282 (5th Cir. 1981) (recognizing "due process requires not only that employers be aware of a hazard…"). The Secretary must establish the employer knew of, or with the exercise of reasonable diligence, could have known of the non-complying condition. *Trinity Indus.*, 206 F.3d at 542; *compare W.G. Yates & Sons Const. Co. Inc. v. Occupational Safety & Health Review Comm'n*, 459 F.3d 604, 606-07 (5th Cir. 2006) (explaining "[n]othing in the Act…makes an employer an insurer or guarantor of employee compliance with the Act at all times.") (citation omitted). Here, the evidence shows Prime was unaware of the unguarded saw and had dock plates available for independent contractors' use, and no evidence even suggested whether the chop saw guard was exposed, or whether the dock plate was not used, on the date of the citation.

5.11 While there are necessarily gaps between the truck carrying the shipping container and loading dock, Petitioner has a dock plate for its independent contractors to use to cover any gap at their discretion. Vol. 1, 139:9-11; 113:24-114:3. Further, whether a gap exists between the loading dock and a trailer depends on individuals Prime does not control – such as the truck driver – and differs with every container drop-off. *Id*. at 138:20-139:1. Further, Mr. Cabello was not present on July 12th to witness any person crossing this gap, which is the date Citation 1, Item 1 indicates the facility was inspected.[6] Thus, every container delivered to Prime may result in differing or no gaps, and no injuries have resulted at Prime's facilities due to these minor gaps. Vol. 1, 136:22-23 (no forklift accidents) and 139:2-4 (no employees falling through gap); *compare Owens-Corning Fiberglass, Corp. v. Donovan*, 659 F.2d 1285, 1290 (5th Cir. 1981) (explaining "[a]n employer may be aware of a possible hazard, yet still lack notice that mandatory personal protective equipment is necessary, if the hazard has never given rise to an injury."). The Secretary offered no evidence Prime knew where any particular trailer would specifically deliver a container, that contractors were not using dock plates, or that

---

[6]  Mr. Cabello testified the inspection occurred on July 13 and 14, 2022, but the Secretary cited Prime for violations occurring on July 12th – when Mr. Cabello was not present. *See* Vol. 1, 90:22-91:19 (in part, **Q.** And so you didn't inspect this property on July 12th though, correct? **A.** No, I did not.); 56:9-13 (Judge Patrick: "The answer was already given but the Court will recognize that you asked a question about the 12th and [Mr. Cabello] wasn't there on the 12th. So he doesn't have personal knowledge of what happened on that day.").

a hole existed (as opposed to a small gap near rubber bumpers) on the date of the citation.

5.12    Prime also lacked knowledge regarding the chop-saw guard tied back, and the record lacked "substantial evidence" supporting its knowledge.  In fact, the only contractor who was allegedly exposed to these hazards (Mr. Vazquez) testified the guard was always down. *Id*. at 140:14-16; 117:7-12 (Vasquez confirming guard was always down); at 130:9-14.  In addition, the OSHA inspection (Cabello) testified he did not witness anyone using the chopsaw[7], and he articulated no appropriate standards for the safe use of the chopsaw. *See* 29 C.F.R. 1910.212(a)(3)(ii) (the guarding device shall be in conformity with any appropriate standards). And no individual who provided testimony at the trial offered any evidence of using the chopsaw while the guard was tied up. There is no evidence Prime was aware of this alleged hazard. *See Trinity Indus.*, 206 F.3d at 542-43 (vacating Trinity's citations because Trinity provided tests evidencing compliance and, thus, a lack of knowledge even though the Secretary argued noncompliance on the inspection date). Therefore, the ALJ lacked substantial evidence of Prime's knowledge of the hazards alleged in Citation 1, Items 1 and 4, or that any personnel were exposed to them on the date of the Citation, and these should be vacated and trial court's decision reversed.

---

[7]    Vol. 1, 95:24-96:1 (**Q.** When you inspected the property did you see anybody actually operate the chopsaw? **A.** No, sir.).

## CONCLUSION

Petitioner requests that this Court grants its Petition for Review, reverse the trial court's Decision and Order related to Citation 1, Items 1 and 4, and vacate those portions addressing Citation 1, Items 1 and 4.

Respectfully submitted,

P. BATES LAW, PLLC

By: */s/Patrick C. Bates*_____
    Patrick C. Bates
    State Bar No. 24068882
    Federal ID No. 2014055
    Philip J. Nolen
    State Bar No. 24109529
    Federal ID No. 3416086
    711 W. Bay Area Blvd., Suite 675
    Houston, Texas 77598
    Ph:   (713) 487-8660
    Fax: (346) 502-3571
    Email: patrick@pbateslaw.com
    Email: philip@pbateslaw.com

    ATTORNEYS FOR PETITIONER
    PRIME INTERNATIONAL
    SHIPPING LLC

<u>**CERTIFICATE OF SERVICE**</u>

I certify that I served a true and correct copy of the foregoing instrument on all counsel of record in accordance via the E-File System on June 25, 2025 including the below.

Aletsey Z. Hinojosa
U.S. Department of Labor
Office of the Solicitor
525 S. Griffin Street, Room 501
Dallas, Texas 75202
Telephone: (972) 850-3154
Email: hinojosa.aletsey.z@dol.gov; and docket.dallas@dol.gov

Michael D. Schoen
U.S. Department of Labor
Office of the Solicitor
525 S. Griffin Street, Room 501
Dallas, Texas 75202
Telephone: (972) 850-3145
Cell: (202) 594-6077
Email: schoen.michael@dol.gov; and docket.dallas@dol.gov

Daniel M. Moczula
U.S. Department of Labor
Office of the Solicitor
201 Varick Street RM 983
New York, New York 10014
Moczula.daniel.m@dol.gov

Louise M. Betts, Counsel for Appellate Litigation
Heather R. Phillips, Counsel for Appellate Litigation
Office of the Solicitor, U.S. DOL
Room S4004 200 Constitution Avenue, N.W.
Washington, D.C. 20210

*/s/Patrick C. Bates*
Patrick C. Bates

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,541 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

*/s/ Patrick C. Bates*
Patrick C. Bates